TATE, Judge
(dissenting).
I respectfully dissent from the majority opinion.
In the present case, a guest passenger completely without fault has proved that her injuries resulted from negligence. Every witness to the accident was produced. Impleaded as defendants are the insurers of both drivers involved in the accident, the negligence of both or either of whom is without contradiction the proximate cause of the injuries received by the passenger. And yet, though she has proven beyond a peradventure of a doubt that her injuries are tort-caused and has impleaded the insurers of all those who might be held to be the tortfeasors, she is denied recovery— because the court cannot make up its mind which witnesses testified to the correct version of the accident, under either of which versions the passenger is entitled to recovery.
I respectfully suggest that we cannot thus abdicate our responsibility to decide cases presented to us, and I suggest further that applicable legal principles have been developed to deal with difficult situations such as the present.
In the first place, where an innocent party is injured as the result of an accident between two automobiles, the burden is upon the drivers of both vehicles to exculpate themselves from negligence; each is deemed negligent in the absence of a showing to the contrary. Insurance Company of North America v. Gore, La.App.Orl., 106 So.2d 471. Cf. Annotation, “Liability of several persons guilty of acts one of which alone caused injury, in absence of showing as to whose act was the cause,” 5 A.L.R.2d 98. In the cited Gore case, this principle was applied where a building was damaged as a result of an accident between two motor vehicles, and the drivers of both vehicles were placed under the burden of proving that they were free of negligence contributing to the accident. Since there is a direct conflict between the legal prin *536 ciple applied by the Orleans court in the Gore case and that applied by the majority in the present appeal, presumably the Supreme Court will grant writs to review this conflict between the circuits[1] and to determine the correct rule to apply in the future.
But aside from the possible applicability of the above principle, I think that as a matter of law we cannot simply throw up our hands and say that we believe all witnesses are sincere and credible and therefore cannot decide which of the two conflicting versions of the accident is correct. There are rules applicable to determining which party has proved the case by a preponderance of the evidence which can and must be applied under such circumstances.
Simply stated, the question to be determined herein is whether the red light faced the southbound Maturin car (in which the plaintiff was riding as a passenger) or instead the westbound DeRouen car at the intersection of Dale and Walton Streets, where the accident occurred.[2]
Mrs. Maturin testified that she looked and the light was green, as she entered the intersection at a speed of about 25 mph. Mrs. DeRouen likewise stated also that she looked, and the light was green, as she entered the intersection at a speed of about 20 mph. It is, as the trial court and the majority stated, impossible that both ladies are correct: one or the other had the green light. But it is also entirely possible that both ladies- are entirely sincere in their testimony: mistakes in observation of the color of traffic signals, often in the late afternoon or the early morning when the rising or setting sun interfere with vision, are not so uncommon as to be beyond contemplation.
Fortunately, however, one other witness saw the light as the cars went into the intersection : the plaintiff herself. She said she looked and saw that the light was green in favor of the Maturin vehicle when “15 to 60 feet” from it (Tr. 196, 213), which she corrected on re-direct examination to-“15 to 16 feet” from the corner. (Tr. 242). The trial court did not accept the passenger’s testimony, not because he felt she was not sincere, but because as a non-driving passenger she had “less interest”' to make observation and because she did' not observe the light “continuously” until they reached the intersection. (As to this-last, it is to be observed that at a speed *537 ■of 20-25 mph, or 29.2 to 36.5 feet per second, for practical purposes the passenger’s observation of the traffic signal was practically simultaneous with the vehicle’s entry into the intersection.)
Now while it is true, assuming equal sincerity, that a passenger is less likely to observe the traffic signals intently than is a ■driver, I am aware of no rule of law or of common observation that completely discounts a passenger’s testimony as to the color of the traffic signal. Under the particular circumstances before us now, where all three ladies are found to be sincere in their testimony, I think the plaintiff’s testimony proves by a preponderance of the •evidence that the light facing the Maturin car was green, and that facing the De-¡Rouen car was red: for while it is not improbable that either Mrs. Maturin or Mrs. DeRouen was mistaken in her observation ■of the light, it is extremely unlikely that two truthful ladies (i. e., Mrs. Maturin and the plaintiff) simultaneously saw a red light as green.
That the defendant Mrs. DeRouen was deficient in observation is somewhat confirmed by her testimony that, as she approached the corner, she looked down Walton Street to her right (from which Mrs. Maturin was approaching) and saw nothing, and that she then proceeded approximately 20 feet further to the center of the intersection and then happened to glance again to her right and saw the Maturin vehicle immediately before the impact. She explained her prior failure to observe the Maturin car by a speculation that it must have been approaching the corner at a high rate of speed. Tr. 212. (Mrs. Maturin stated that she did not look to her left, from which Mrs. DeRouen was approaching, until the impact, because her view was somewhat obstructed and because she had entered the intersection in reliance upon her green light.)
In failing to hold that the two. witnesses in favor of the Maturin driver failed to preponderate over the one witness in favor of the DeRouen driver, the májority cited the familiar rule that the mere number of witnesses does not determine which party has borne the burden of the proof. See, e. g., 32 C.J.S. Evidence § 1022, p. 1054. It is, of course, open to the trier of fact to believe one witness and to discount the contrary testimony of many other witnesses, although “in view of the comparative probabilities of mistake or perjury, the testimony of a single witness who is opposed to several will not readily be accepted as controlling,” 32 C.J.S. Evidence § 1022, p. 1057.
But the above is not the situation now before us. The trier of fact accepted as truthful the testimony of all three witnesses to the fact, but could not decide whether the two witnesses in the Maturin vehicle were correct as against the single witness in the DeRouen vehicle. The correct rule to apply under these circumstances is that set forth at 32 C.J.S. Evidence § 1022c, p. 1057:
“However, disparity in number of witnesses is a circumstance not to be overlooked, it being a circumstance to be considered by the trier of the facts, and where, without regarding the difference in number of witnesses, a preponderance of evidence on either side cannot be detected, the court or jury may properly decide in conformity with the testimony of the greater number of witnesses.”
Cited in support of these statements are the following Louisiana cases: Thoman v. Deliberto, 1 Cir., 17 La.App. 574, 136 So. 904; Stott v. Talbert, 1 Cir., 2 La.App. 472. The treatise continues further (citing Thermo Electric Co. v. Dauterive, 8 La.App. 526, and Peresteras v. Lombardo, *538 3 La.App. 324) that “It has even been said that the testimony of two or more credible or unimpeached witnesses will prevail over that of one witness of like character,” 32 C.J.S. Evidence § 1022, p. 1057.
Thus, under these legal rules for determining whether a fact has been proved by the preponderance of the evidence, I think that the two credible witnesses stating that the traffic signal favored the Maturin vehicle’s entry into the intersection outweigh the single no doubt equally sincere witness to the contrary, whom we must regard as honestly mistaken.
For the foregoing reasons, I dissent from the majority’s dismissal of the plaintiffs’ suit against those legally responsible for the operation of both vehicles, since I feel that judgment should be rendered against the defendants liable for the negligent operation of the DeRouen vehicle at the time of the accident.

. See Art. VII, Section 11, DSA-Constitution: “• * * [Wjhero the application [for writs of certiorari] is based solely upon the ground that the decision of the question of law involved is in conflict with the jurisprudence of the Supreme Court or another Court of Appeal upon a question not yet decided by the Supreme Court, * * * then the application shall be granted as a matter of rights * » * ”

. The majority and trial court opinion consider the defendant DeRouen car as approaching the intersection northerly along Dale Street and the Maturin car as approaching it westerly along Walton Street. However, all the witnesses and exhibits speak of Dale Street on which the defendant Mrs. DeRouen was driving as east-west, and state that that defendant was driving westward (P-2, P-3, P-4, see, e. g., testimony of investigating police officer, Tr. 193) ; that is, into the setting sun of 4 :30 P.M. on a January afternoon. The reason for this discrepancy is shown by the plat of intersection introduced in evidence- (P-l)„ which shows that Dale Street actually runs northwesterly-southeasterly (on. which the defendant Mrs. DeRouen was-, thus approaching in a northwesterly direction; with the sun on her left), while-Walton Street runs northeasterly-southwesterly (on which Mrs. Maturin was-proceeding southwesterly, with the sun on her right.) Although, the weather being-clear, it might be a fair deduction from-common experience that at the time the-sun interfered with either or both drivers’ visibility of the traffic signal, nevertheless it must also be admitted that-there is not a line of testimony concerning such interference except for the pictures of the intersection in evidence (P— 2, P-3, P-4).